**United States District Court**
For the Northern District of California

1

2

3

4

5            UNITED STATES DISTRICT COURT

6            NORTHERN DISTRICT OF CALIFORNIA

7

8   LARRY MONTGOMERY,                    No. C-12-1359 EMC

9            Plaintiff,

10       v.                              **ORDER DENYING PLAINTIFF'S**
                                         **MOTION TO REMAND; GRANTING**
11  NATIONAL CITY MORTGAGE, *et al.*,    **DEFENDANTS NATIONAL CITY**
                                         **MORTGAGE AND PNC BANK'S**
12           Defendants.                 **MOTION TO DISMISS; AND**
    _____/ **GRANTING IN PART AND DENYING**
                                         **IN PART DEFENDANTS LITTON LOAN**
13                                       **SERVICING AND OCWEN LOAN**
                                         **SERVICING'S MOTION TO DISMISS**
14
                                         **(Docket Nos. 12, 16, 17)**
15

16           Plaintiff Larry Montgomery has filed suit against Defendants National City Mortgage (a

17  division of National City Bank of Indiana) (hereinafter "National"), PNC Bank, Litton Loan

18  Servicing, and Ocwen Loan Servicing, asserting claims for, *inter alia*, breach of contract and fraud

19  for conduct related to a construction loan that Mr. Montgomery originally obtained from National.

20  Currently pending before the Court are:  (1) Mr. Montgomery's motion to remand; (2)

21  National/PNC's motion to dismiss; and (3) Litton and Ocwen's motion to dismiss.  Having

22  considered the parties' briefs and accompanying submissions, as well as the oral argument of

23  counsel, the Court hereby **DENIES** the motion to remand, **GRANTS** National/PNC's motion to

24  dismiss, and **GRANTS** in part and **DENIES** in part Litton and Ocwen's motion to dismiss.

25              **I.    FACTUAL & PROCEDURAL BACKGROUND**

26           In his complaint, Mr. Montgomery alleges as follows.  Mr. Montgomery is the owner of

27  certain real property in Fremont, California.  *See* Compl. ¶ 1.  Mr. Montgomery originally purchased

28

**United States District Court**
For the Northern District of California

1   the property back in 1999.  *See* Compl. ¶ 16.  In early 2006, he decided to remodel his home and so

2   started shopping for a construction loan.  *See* Compl. ¶ 17.

3   A.      National/PNC

4           Ultimately, Mr. Montgomery entered into a loan agreement with National, which later

5   became part of PNC.  *See* Compl. ¶ 3.  Mr. Montgomery took out a total loan of $927,500.  *See*

6   Compl. ¶ 15 & Ex. A (deed of trust).  As reflected in a "rider" attached to the deed of trust, National

7   promised Mr. Montgomery that, during the time of construction, he would have an interest-only loan

8   but, after construction was completed and in any event no later than February 27, 2007, the loan

9   would become a 30-year fixed loan with a set principal/interest payment.  *See* Compl. ¶¶ 18, 20.

10          As it turned out, when construction was completed, Mr. Montgomery's loan was not

11  converted to a 30-year fixed loan with a set principal/interest payment.  Rather, National told Mr.

12  Montgomery that this kind of loan was no longer available and that he would have to continue

13  making interest only payments until that kind of loan became available again.  *See* Compl. ¶ 25.B.

14  B.      Litton and Ocwen

15          Although not alleged in the complaint, it appears that, on August 30, 2010, National/PNC

16  assigned the deed of trust to MTGLQ Investors, L.P.  *See* Docket No. 7 (PNC's RJN, Ex. C)

17  (recorded on 6/1/2011).  According to Mr. Montgomery, several months later, Litton became the

18  servicer of the loan.  *See* Compl. ¶ 27.

19          In December 2010, Mr. Montgomery talked to Litton about a loan modification.  *See* Compl.

20  ¶ 28.  At this point, Mr. Montgomery decided that, if he could not get his loan converted to a 30-year

21  fixed loan with a set principal/interest payment, then he would just "walk away from the Property."

22  Compl. ¶ 29.

23          Litton referred Mr. Montgomery to First Alliance, "the company handling all of LITTON'[s]

24  modifications."  Compl. ¶ 30.  When Mr. Montgomery contacted First Alliance, it told him that

25  Litton had bought the loan from National for $520,000 and that Litton agreed to reduce the principal

26  to $546,563.  *See* Compl. ¶ 31.  Based on this new agreement, Mr. Montgomery continued to make

27  payments, from January to June 2011.  *See* Compl. ¶ 32.  However, on June 22, 2011, Litton

28

United States District Court

For the Northern District of California

1    suddenly informed Mr. Montgomery that he was in default and that it would now only accept

2    $738,000 as settlement of the debt.  *See* Compl. ¶ 33.

3         It appears that, on August 18, 2011, a notice of default and election to sell was issued for the

4    property at issue.  The notice was issued by Old Republic Default Management Services, either as

5    the original trustee, the substituted trustee, or agent for the trustee or beneficiary under the 2006

6    deed of trust.  The notice instructed that Litton should be contacted for any questions.  *See* Docket

7    No. 7 (PNC's RJN, Ex. D) (notice).

8         According to Mr. Montgomery, Litton transferred the property to Ocwen in November 2011.

9    *See* Compl. ¶ 36.  A trustee's sale was scheduled for January 23, 2012.  *See* Compl. ¶ 37.  Three

10   days before this scheduled sale, Mr. Montgomery filed the currently pending action in state court.  It

11   appears that the trustee's sale actually took place one week later, on January 30, 2012.  The

12   purchaser of the property was MTGLQ, *i.e.*, the party to whom PNC/National had assigned the deed

13   of trust.  *See* Docket No. 7 (PNC's RJN, Ex. E).

14   C.   <u>Claims</u>

15        Based on, *inter alia*, the above allegations, Mr. Montgomery has asserted the following

16   claims:

17        (1)   Breach of contract against National only.  Mr. Montgomery alleges that National

18   breached the parties' agreement by failing to convert the interest-only loan into a 30-year fixed loan

19   with a set principal/interest payment.  *See* Compl. ¶ 47.

20        (2)   Breach of the implied covenant of good faith and fair dealing against National only.

21   Mr. Montgomery alleges that National breached the implied covenant by continuing to collect

22   interest-only payments from him, all the while knowing that it did not intend to put him into a 30-

23   year fixed loan with a set principal/interest payment.

24        (3)   Deceit, promissory fraud, negligent misrepresentation, and violation of California

25   Business & Professions Code § 17200, against both National and Litton.  According to Mr.

26   Montgomery, National falsely stated that the loan would be converted to a 30-year fixed loan with a

27   set principal/interest payment.  *See, e.g.*, Compl. ¶ 65.  Mr. Montgomery also suggests, at least for

28   the deceit claim, that National knew Mr. Montgomery would never be able to own the property and

1    suppressed this fact to deceive him into agreeing to an interest-only loan.  See Compl. ¶ 62.  As for

2    Litton, Mr. Montgomery alleges that it falsely agreed to reduce the principal to approximately

3    $546,000.  *See, e.g.*, Compl. ¶ 68.

4           (4)    Violation of the California Rosenthal Act against all Defendants, *i.e.*, National,

5    Litton, and Ocwen.  Mr. Montgomery claims that Defendants used unconscionable means in the

6    attempt to collect – *e.g.*, sending threatening and deceptive letters, making threatening and deceptive

7    telephone calls, and making false reports to credit reporting agencies (*e.g.*, about his credit standing,

8    about the debt that was owed, and about his payment history).  *See* Compl. ¶¶ 133-34.

9           (5)    Wrongful foreclosure against all Defendants, *i.e.*, National, Litton, and Ocwen.

10   According to Mr. Montgomery, Defendants wrongfully foreclosed because they failed to comply

11   with California Civil Code § 2923.5, which provides that a notice of default may not be filed until

12   after the borrower is contacted or an attempt has been made to contact the borrower "in order to

13   assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."

14   Cal. Civ. Code § 2923.5(a)(2).  Although Defendants stated in a declaration attached to the notice of

15   default that they tried to contact Mr. Rosenthal with due diligence, that statement was false.  *See*

16   Compl. ¶¶ 105-06.

17          (6)    Quiet title against National, Litton, and Ocwen.

18                              **II.    DISCUSSION**

19   A.     Motion to Remand

20          Mr. Montgomery has moved to remand the action back to state court.  He essentially makes

21   two arguments in support of remand: (1) remand is appropriate pursuant to the Ninth Circuit's

22   decision in *Chapman v. Deutsche Bank National Trust Co.*, 651 F.3d 1039 (9th Cir. 2011), and (2)

23   remand is proper pursuant to *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).

24          The first argument is without merit.  In *Chapman*, the Ninth Circuit essentially reaffirmed

25   what is known as the prior exclusive jurisdiction doctrine, *i.e.*, "'[w]here concurrent proceedings in

26   state and federal courts are both suits in rem or quasi in rem, the court first assuming jurisdiction

27   over the property may maintain and exercise that jurisdiction to the exclusion of the other.'"

28   *Chapman*, 651 F.3d at 1041; *cf. 40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587, 588-89

**United States District Court**
For the Northern District of California

1   (9th Cir. 1992) (noting that, under *Colorado River* abstention, one of the factors is "whether either

2   the state or federal court has exercised jurisdiction over a res"; adding that this factor may be

3   dispositive – *i.e.*, "[i]n proceedings in rem or quasi in rem, the forum first assuming custody of the

4   property at issue has exclusive jurisdiction to proceed").  Contrary to what Mr. Montgomery argues

5   in his reply brief, the order in which the state court and federal court proceedings does matter.  *See*

6   Reply at 2.  The prior exclusive jurisdiction doctrine is titled such precisely because the federal court

7   defers to the state court proceeding where the state court obtained jurisdiction first.  *See Chapman*,

8   651 F.3d at 1044 (noting that, "'where the jurisdiction of the state court has *first* attached, the federal

9   court is precluded from exercising its jurisdiction over the same res to defeat or impair the state

10  court's jurisdiction") (emphasis added); *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142,

11  1145 (9th Cir. 1989) (noting that "[t]he rule against concurrent in rem proceedings is not a

12  constitutional limitation upon the jurisdiction of the federal courts" but rather "a prudential

13  limitation applied by the Supreme Court in the interest of judicial harmony[;] this does not mean,

14  however, that the matter is within the discretion of the district court" because "[t]he language of

15  *Penn General* indicates that a federal court must yield to a *prior* state proceeding") (emphasis

16  added); *Knaefler v. Mack*, 680 F.2d 671, 675 (9th Cir. 1982) (stating that, "[w]here concurrent

17  proceedings in state and federal court are both suits in rem or quasi in rem, the court *first* assuming

18  jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the

19  other") (emphasis added).

20          In the instant case, Mr. Montgomery argues that the Court should remand the case back to

21  state court because a state superior court exercised jurisdiction over the real property at issue in an

22  unlawful detainer action.  But, as a declaration from his counsel admits, the unlawful detainer action

23  was not filed against him until March 28, 2012.  *See* Docket No. 28 (Crone Decl. ¶ 2).  This Court,

24  however, first obtained jurisdiction over the real property at issue when Defendants removed this

25  pending lawsuit to federal court on March 16, 2012.  Thus, the prior exclusive doctrine does not

26  apply.  *Compare Chapman*, 651 F.3d at 1044 (noting that the state court first asserted jurisdiction

27  over the unlawful detainer action when the bank filed its complaint on December 30, 2008, while the

28

**United States District Court**
For the Northern District of California

1   federal district court obtained jurisdiction over the quiet title action when defendants filed their

2   notice of removal on April 29, 2009).

3          As for Mr. Montgomery's second argument, the Supreme Court in *Quackenbush* held that,

4   "in cases where the relief being sought is equitable in nature or otherwise discretionary, federal

5   courts not only have the power to stay the action based on abstention principles, but can also, in

6   otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing

7   the suit or remanding it to state court." *Quackenbush*, 517 U.S. at 721.  According to Mr.

8   Montgomery, *Quackenbush* dictates a remand in his case because he is seeking primarily equitable

9   relief – namely, an injunction and contract rescission.  *See* Mot. at 13.  Even assuming that

10  *Quackenbush* is applicable where the relief sought is primarily equitable in nature, *see Chapin v.*

11  *Aguirre*, No. 05VC1906, 2006 U.S. Dist. LEXIS 91773, at *8-10 (S.D. Cal. Dec. 18, 2006) (finding

12  plaintiffs' equitable claims "merely incidental" to their damages claims), Mr. Montgomery's

13  requested relief can hardly be characterized as such.  As reflected in the prayer for relief, Mr.

14  Montgomery seeks, *inter alia*, general, special, and consequential damages; punitive damages and

15  civil penalties; and statutory and actual damages.  *See also Quackenbush*, 517 U.S. at 721 (noting

16  that, " while we have held that federal courts may stay actions for damages based on abstention

17  principles, we have not held that those principles support the outright dismissal or remand of

18  damages actions").

19         The Court therefore denies the motion to remand.

20  B.     PNC's Motion to Dismiss

21                1.    Legal Standard

22         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

23  failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

24  dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

25  *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

26  must take all allegations of material fact as true and construe them in the light most favorable to the

27  nonmoving party, although "conclusory allegations of law and unwarranted inferences are

28  insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

United States District Court

For the Northern District of California

2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

2.    Judicial Estoppel

Mr. Montgomery has asserted each of the causes of action pled in the complaint against National/PNC.  PNC's first argument is that the contract and fraud-related claims should be dismissed with prejudice based on judicial estoppel.  According to PNC, judicial estoppel is warranted because Mr. Montgomery filed a Chapter 7 bankruptcy on March 8, 2010 – *i.e.*, after his claims against PNC had accrued – but never identified those claims for the bankruptcy court during the proceedings.

As the Ninth Circuit has noted,

> [j]udicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. [The Ninth Circuit] invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts."

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

The Supreme Court has identified three factors for a court to take into consideration in determining whether to apply the doctrine of judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading the first court to accept the earlier position; and (3) whether the party would derive an unfair advantage if not estopped or whether the opposing party would suffer an unfair detriment if the party were not estopped.  *See id.* at 782-83 (citing *New Hampshire v. Maine*, 121 S. Ct. 1808, 1815 (2001)).  In the bankruptcy context, the Ninth Circuit has held that "[j]udicial estoppel will be imposed when the

**United States District Court**
For the Northern District of California

1   debtor has knowledge of enough facts to know that a potential cause of action exists during the

2   pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the

3   cause of action as a contingent asset." *Id.* at 784.

4         In his opposition, Mr. Montgomery does not dispute that he filed for bankruptcy, that he

5   failed to identify his claims against PNC as a contingent asset, and that he obtained a discharge from

6   the bankruptcy court.[1]  Mr. Montgomery argues, however, that judicial estoppel still should not be

7   applied because (1) during the time he was in bankruptcy, "he was still working with Defendants to

8   reach resolution on the mortgage, and [thus] from his perspective there was no potential claim at

9   issue," and (2) he failed to include the claims against PNC in his bankruptcy filings by mistake.

10   Mot. at 2.  Mr. Montgomery also argues that, even if the Court were to conclude that judicial

11   estoppel should apply, it should still give leave to amend because the claims really belong to the

12   bankruptcy estate and the estate should be given an opportunity to assert the claims.

13         a.   <u>Potential Claim</u>

14         As noted above, the Ninth Circuit has held that "[j]udicial estoppel will be imposed when the

15   debtor has knowledge of enough facts to know that a potential cause of action exists during the

16   pendency of the bankruptcy . . . ."  *Hamilton*, 270 F.3d at 784.  Given this standard, Mr.

17   Montgomery has no basis for claiming that, from his perspective, he did not have any contract-

18   related claims at the time of the bankruptcy.  At the time of the bankruptcy, *i.e.*, 2010, it is clear that

19   PNC had reneged on its alleged promise to convert the interest-only loan into a 30-year fixed loan

20   which was supposed to have been done upon the completion of the construction or at the latest by

21   February 27, 2007.  The fact that Mr. Montgomery was trying to resolve the dispute informally with

22   PNC at the time of the bankruptcy is immaterial.  A potential cause of action still existed.  *See, e.g.*,

23   *Kaufman v. Capital Quest*, No. C-11-1301 JCS, 2011 U.S. Dist. LEXIS 134589, at *49 (N.D. Cal.

24   Nov. 22, 2011) (Spero, J.) (noting that "[t]he facts that Plaintiff claims constitute the instant causes

25   of action occurred *before* he filed his amended Schedule B" and therefore he was "required to

26   include these unliquidated, contingent claims") (emphasis in original); *see also Rose v. Beverly*

27

28         [1]  Mr. Montgomery was discharged on June 2, 2010.  *See* Docket No. 7 (PNC's RJN, Ex. B) (discharge and final decree).

United States District Court

For the Northern District of California

1   *Health & Rehab. Servs.*, 356 B.R. 18, 25 (E.D. Cal. 2006) (holding that "the duty of the bankruptcy

2   petitioner to disclose the existence of a potential claim is not a formalistic duty predicated on the

3   procedural status of a claim, but is a duty of candor that accrues from the time the facts that give rise

4   to the potential claim are known").

5        To the extent Mr. Montgomery suggests that he did not have enough facts at the time of the

6   bankruptcy to know about the alleged fraud by PNC, that argument is essentially the same argument

7   Mr. Montgomery makes in favor of the delayed discovery rule.  For the reasons discussed *infra*, that

8   argument lacks merit.

9                      b.    Mistake

10       Mr. Montgomery's second argument is that judicial estoppel should not be applied against

11  him because his failure to identify the claims against PNC during the bankruptcy proceedings was

12  simply a mistake on his part.

13       The Ninth Circuit has noted that "[j]udicial estoppel seeks to prevent the deliberate

14  manipulation of the courts" and, therefore, it is "inappropriate . . . when a party's prior position was

15  based on inadvertence or mistake."  *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997).  There

16  does not appear to be any good reason as to why this statement should not hold true in the

17  bankruptcy context, although at least one judge in this District has held to the contrary.  *Compare*

18  *Wolf v. Wells Fargo Bank, N.A.*, No. C11-01337 WHA, 2011 U.S. Dist. LEXIS 117835, at \*33-34

19  (N.D. Cal. Oct. 12, 2011) (Alsup, J.) (applying judicial estoppel in the bankruptcy context;

20  concluding that plaintiff "pled sufficient facts to make it plausible that her failure to disclose this suit

21  was inadvertent or a mistake"), *with Yoshimoto v. O'Reilly Auto., Inc.*, No. C 10-05438 LB, 2011

22  U.S. Dist. LEXIS 60598, at \*16 (N.D. Cal. June 6, 2011) (Beeler, J.) (noting that one factor to

23  consider with respect to judicial estoppel is "whether the party to be estopped acted inadvertently or

24  with an intent to defraud the court or creditors" but adding that "the Ninth Circuit has not applied

25  this factor in the bankruptcy context").

26       But, even if mistake is a basis to avoid judicial estoppel, that does not automatically save Mr.

27  Montgomery, either with respect to his contract or fraud-related claims.  Notably, in the opposition

28  brief, the only basis for mistake that seems to be articulated is the fact that Mr. Montgomery was pro

**United States District Court**
For the Northern District of California

1   se during the bankruptcy proceedings.  But Mr. Montgomery's pro se status in and of itself does not

2   establish a mistake.  As noted above, he knew of the act which constituted to alleged wrongdoing at

3   the time of the bankruptcy.  The only possible mistake would be his understanding of bankruptcy

4   disclosure requirements, but Mr. Montgomery cites no authority for the proposition that ignorance of

5   the bankruptcy law's requirements (as opposed to some mistake of fact) constitutes mistake barring

6   judicial estoppel.  Generally, ignorance of the law is no excuse.  *See, e.g.*, *Jethroe v. Omnova*

7   *Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005) (stating that "to claim that her failure to disclose

8   was inadvertent [plaintiff] must show not that she was unaware that she had a duty to disclose her

9   claims but that, at the time she filed her bankruptcy petition, she was unaware of the facts giving rise

10  to them"); *Galin v. IRS*, 563 F. Supp. 2d 332, 341 (D. Conn. 2008) (stating that "[t]he law is clear

11  that legal advice and ignorance of the law are not defenses to judicial estoppel"); *cf. Helfand*, 105

12  F.3d at 536 (noting that "[t]he defendants' refusal to respond to the plaintiffs' subpoena duces tecum

13  may have left the plaintiffs without complete information" but adding that the failure to obtain the

14  information "was the plaintiffs' fault"; pointing out that the plaintiffs did not challenge the assertion

15  of the privilege, *e.g.*, by means of a motion to compel).

16      Finally, to the extent Mr. Montgomery argues that judicial estoppel should not apply PNC

17  was not prejudiced or harmed by his failure to identify the claims against PNC in bankruptcy, that

18  argument has little merit based on the Ninth Circuit's decision in *Hamilton*.  There, the court

19  concluded that judicial estoppel should apply "to protect the integrity of the bankruptcy process."

20  *Hamilton*, 270 F.3d at 785.  The court emphasized that "the plaintiff's failure to list his claims

21  against [the defendant] as assets on his bankruptcy schedules deceived the bankruptcy court and [the

22  plaintiff's] creditors, who relied on the schedules to determine what action, if any, they would take

23  in the matter."  *Id.*  The Ninth Circuit quoted approvingly a Fifth Circuit decision where the court

24  stated:

25          The courts will not permit a debtor to obtain relief from the
            bankruptcy court by representing that no claims exist and then
26          subsequently to assert those claims for his own benefit in a separate
            proceeding.  The interests of both the creditors, who plan their actions
27          in the bankruptcy proceeding on the basis of information supplied in
            the disclosure statements and the bankruptcy court, which must decide
28

United States District Court

For the Northern District of California

1    whether to approve the plan of reorganization on the same basis, are
2    impaired when the disclosure provided by the debtor is incomplete.

3  *Id.*  Thus, prejudice to PNC is not a prerequisite to judicial estoppel in the bankruptcy context.

4                c.    <u>Real Party in Interest</u>

5        In his final argument, Mr. Montgomery contends that, even if the Court were to conclude

6  that judicial estoppel should apply, it should still give leave to amend because the claims really

7  belong to the bankruptcy estate and the estate should be given an opportunity to assert the claims.  In

8  support of this argument, Mr. Montgomery cites *Cloud v. Northop Grumman Corp.*, 67 Cal. App.

9  4th 995 (1998).

10        This argument is not convincing.  Contrary to what Mr. Montgomery suggests, the court did

11  not conclude that, if judicial estoppel did apply, it would apply only to the debtor and not to the

12  bankruptcy estate.  Rather, the court simply held that the trial court erred in granting the defendants'

13  motion for judgment on the pleadings on the basis of judicial estoppel because there were factual

14  issues that could not be answered by exclusive reference to the complaint and bankruptcy filings.

15  *See id.* at 1018-19.

16                d.    <u>Summary</u>

17        For the foregoing reasons, the Court concludes that judicial estoppel is applicable to Mr.

18  Montgomery's claims as asserted against National/PNC.

19            3.    <u>Statute of Limitations</u>

20        Even if judicial estoppel were not a bar to the claims against National/PNC, the Court finds

21  that there is another independent basis for dismissal, namely, the statute of limitations.

22        The contract-related claims have a four-year statute of limitations.  *See* Cal. Code Civ. Proc.

23  § 337(1) (providing for a four-year statute of limitations for "[a]n action upon any contract,

24  obligation or liability founded upon an instrument in writing").  As PNC argues, the contract-related

25  claims are clearly time barred.  The claims against it arose in 2007, *i.e.*, when, upon completion of

26  construction, PNC did not convert the interest-only loan into a 30-year fixed loan with a set

27  principal/interest payment.  Mr. Montgomery, however, failed to file this lawsuit until January 2012.

28

United States District Court
For the Northern District of California

Fraud-based claims have a three-year statute of limitations, except for the § 17200 claim which has a four-year limitations period and the negligent misrepresentation claim which has a two-year statute of limitations. *See id.* § 338(d) (providing for a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake"); Cal. Bus. & Prof. Code § 17208 (providing that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (stating that a claim for negligent misrepresentation has a two-year statute of limitations pursuant to California Code of Civil Procedure § 339(1)). As to these claims, Mr. Montgomery argues that the statute of limitations is not a bar because of the delayed discovery rule, *see Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988) (noting that, generally, "an action accrues on the date of injury" but, under the discovery rule, "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause"); Cal. Code Civ. Proc. § 338(d) (providing that an action for relief on the ground of fraud or mistake "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake"),[2] and, "[a]bsent a specific statement of that date in the pleading, the complaint should be construed broadly to allow discovery revealing delayed discovery." Opp'n at 4.

This argument is not persuasive. If the statute of limitations is a bar on the face of the complaint, then the relevant claims should be dismissed. *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (noting that "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint'"). While Mr. Montgomery maintains the Court could give him leave to amend, he has not articulated any basis as to why the delayed discovery rule is applicable in his case. He simply states that, "[a]long with most of the Nation, [he] did not become aware of the nature and scope of his lender's wrongful acts until he faced foreclosure upon his home." Opp'n at 4. This is insufficient. He does not explain why his knowledge of the alleged breach by PNC did not trigger the statutes of limitation.

---

[2] *See also Brandon G. v. Gray*, 111 Cal. App. 4th 29, 35 (2003) (noting that "Code of Civil Procedure section 338, subdivision (d), effectively codifies the delayed discovery rule in connection with actions for fraud").

**United States District Court**
For the Northern District of California

1    The Court therefore dismisses the claims against National/PNC based on judicial estoppel

2    and on the statute of limitations.

3    C.    Litton and Ocwen's Motion to Dismiss

4         1.    Legal Standard

5         *See* Part III.B.1, *supra*.

6         2.    Ocwen

7         As a preliminary matter, Ocwen argues that all claims against it should be dismissed because

8    Mr. Montgomery has failed to make any specific factual allegations as to any wrongdoing on its

9    part.  It is true that the bulk of the complaint is about alleged wrongdoing by National/PNC and by

10   Litton.  Moreover, the causes of action against Ocwen (*i.e.*, Rosenthal, wrongful foreclosure, and

11   quiet title) lump the actions of all defendants together.  Therefore, the Court grants the motion to

12   dismiss as to Ocwen for lack of specificity as required by *Twombly* and *Iqbal*.  Notably, Mr.

13   Montgomery seems to recognize the deficiencies in his complaint as he states in his opposition brief:

14   "Plaintiff seeks leave to amend the cause of action to include facts omitted as to OCWEN."  Opp'n

15   at 8.  As discussed below the Court shall allow amendment as to the quiet title claim only.  The

16   wrongful foreclosure claim is futile, and he failed to oppose dismissal of the Rosenthal claim.  These

17   two claims therefore are dismissed with prejudice.

18        3.    Litton

19        Before addressing the claims asserted against Litton, the Court takes note that, in his

20   opposition brief, Mr. Montgomery makes allegations as to misconduct by Litton that is not pled in

21   the complaint.  For example, he claims that

22             a customer service representative employed by Defendant LITTON
               told him to stop making his mortgage in order to qualify for a loan
23             modification.  (FAC at ¶ 33.)  LITTON also represented that if
               Plaintiff made an initial payment of $9000.00, and monthly payments
24             of $2300.00 it would bring the loan current and cease foreclosure
               activity.  (FAC at ¶ 37.)  The false nature of these representations was
25             revealed on January 2011 when LITTON refused Plaintiff's monthly
               payment.  (FAC at ¶ 47.)  LITTON then presumed foreclosure activity
26             on the basis that the payments tendered in November 2009 (of $9000)
               and the nearly one year of payments (totaling $50,000) failed to bring
27             Plaintiff current, despite LITTON's representation to the contrary.
               (FAC at ¶¶ 33-47.)

28

13

United States District Court

For the Northern District of California

1  Opp'n at 2-3.  As indicated by the above, it appears that the allegations are tied to an amended

2  complaint, but the only complaint that this Court has on record is the original complaint that was

3  filed by Mr. Montgomery.

4          Accordingly, in this order, the Court focuses only on the allegations that are pled in the

5  original complaint.  As indicated above, Mr. Montgomery's main complaint against Litton is that it

6  falsely promised to reduce the principal to about $546,000.

7          4.      Fraud-Related Claims

8          For all of the fraud-related claims (*i.e.*, deceit, promissory estoppel, § 17200, and negligent

9  misrepresentation), Litton argues for dismissal on the following grounds: (1) Mr. Montgomery has

10 failed to allege a misrepresentation of a past or existing material fact; (2) Mr. Montgomery has failed

11 to plead fraud with sufficient particularity; and (3) Mr. Montgomery has failed to adequately allege

12 damages.  For the negligent misrepresentation claim, Litton also argues for dismissal on the basis

13 that Mr. Montgomery has failed to allege that it owed him any duty.

14          a.      Arguments Applicable to All Fraud-Related Claims

15         The arguments identified above are not especially persuasive.  For example, while typically

16 fraud-related claims are predicated on a misrepresentation about a past or existing fact, *see Tarmann*

17 *v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (noting that "'[p]redictions as to

18 future events, or statements as to future action by some third party, are deemed opinions, and not

19 actionable fraud'"), "[c]ertain broken promises of future conduct may . . . be actionable."  *Id.*  More

20 specifically, a promise, made without any intention of performing it is actionable.  *See id.* at 158-59

21 (citing Cal. Civ. Code § 1710(4)).  "'A false promise is actionable on the theory that a promise

22 implies an intention to perform, that intention to perform or not to perform is a state of mind, and

23 that misrepresentation of such a state of mind is a misrepresentation of fact.  The allegation of a

24 promise (which implies a representation of intention to perform) is the equivalent of the ordinary

25 allegation of a representation of fact.'"  *Id.* (emphasis omitted).  In the instant case, Mr. Montgomery

26 has asserted a false promise based on that very theory – *i.e.*, because, at the time it promised to

27 reduce the principal, Litton did not intend to keep that promise.  *See, e.g.*, Compl. ¶¶ 67-68 (alleging

28

**United States District Court**
For the Northern District of California

1   that Litton promised that the principal would be reduced but Litton "made this assertion as if true,

2   knowing it was indeed not true").

3          As another example, while duty is an element of a claim for negligent misrepresentation,

4   arguably, Mr. Montgomery has adequately alleged such a duty applying the six-factor test employed

5   by the California appellate court in *Nymark v. Heart Federal Savings & Loan Association*, 231 Cal.

6   App. 3d 1089 (1991).  *See Garcia v. Ocwen Loan Servicing, LLC*, No.: C 10-0290 PVT, 2010 U.S.

7   Dist. LEXIS 45375, at *7-8 (N.D. Cal. May 10, 2010) (Trumbull, J.) (noting that "*Nymark* does not

8   stand for the proposition that a lender never owes a duty of care to a borrower"; ultimately

9   concluding that the defendant (Ocwen) arguably owed the plaintiff "a duty of care in processing

10  [his] loan modification application, as at least five of the six factors weigh in favor of finding a duty

11  of care").

12         That being said, there is another reason why Mr. Montgomery's fraud-related claims are

13  problematic.  More specifically, Mr. Montgomery has claimed that Litton knew the promise was

14  false at the time it was made but he has not provided any factual allegations to make this claim

15  plausible.  *See Tarmann*, 2 Cal. App. 4th at 159 (noting that, "[t]o maintain an action for deceit

16  based on a false promise, one must specifically allege and prove, among other things, that the

17  promisor did not intend to perform at the time he or she made the promise and that it was intended to

18  deceive or induce the promisee to do or not do a particular thing"); *see also Apollo Capital Fund*

19  *LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (noting that, "[i]n contrast to

20  fraud, negligent misrepresentation does not require knowledge of falsity" but pointing that a similar

21  requirement is imposed – *i.e.*, "[a] defendant who makes false statements honestly believing that

22  they are true, but without reasonable ground for such belief, . . . may be liable for negligent

23  misrepresentation") (internal quotation marks omitted).

24         The Court therefore dismisses the fraud-based claims but without prejudice.  Mr.

25  Montgomery has leave to amend.  However, the Court emphasizes that Mr. Montgomery must have

26  a Rule 11 basis for making any allegation that Litton knew the promise was false at the time it was

27  made *and* he must made specific factual allegations indicating that Litton had such knowledge.  Mr.

28  Montgomery should also be mindful of the pleading requirements of Federal Rule of Civil Procedure

United States District Court

For the Northern District of California

9, although "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

### 5.   Rosenthal Claim

In its motion, Litton argues that the Rosenthal claim should be dismissed because (1) Mr. Montgomery has failed to allege that Litton is a debt collector for purposes of the statute; (2) as a matter of law, foreclosure does not constitute debt collection; and (3) Mr. Montgomery has failed to specify what the unconscionable debt collection practices were. *See* Mot. at 8.

Here, the Court grants the motion to dismiss regardless of the validity of Litton's arguments because, in his opposition brief, Mr. Montgomery fails to address the challenges to the Rosenthal claim at all.  Because Mr. Montgomery has not opposed the motion to dismiss, the dismissal is with prejudice.

### 6.   Wrongful Foreclosure Claim

Mr. Montgomery's wrongful foreclosure claim is predicated on Litton's alleged failure to comply with California Civil Code §¤ 2923.5, which provides that a notice of default may not be filed until after the borrower is contacted or an attempt has been made to contact the borrower "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a)(2).  As Litton argues, this claim should be dismissed because § 2923.5 only provides as a remedy a postponement of the sale and here the sale has already taken place. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010) (stating that "[t]he right of action is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with section 2923.5").  Mr. Montgomery tries to get around this fact by pointing out that, at the time that he filed his complaint, the sale had not taken place yet.  But it was up to Mr. Montgomery to seek some kind of preliminary injunctive relief based on the alleged failure to comply with the statute *before* the only viable remedy became an impossibility.

### 7.   Quiet Title Claim

Finally, Litton challenges the claim for quiet title on two grounds: (1) at best Mr. Montgomery has only an equitable interest in the real property but "the owner of an equitable

United States District Court

For the Northern District of California

1    interest cannot maintain an action to quiet title against the owner of the legal title," *Stafford v.*

2    *Ballinger*, 199 Cal. App. 2d 289, 294-95 (1962); and (2) a quiet title claim is not viable without at

3    the very least an allegation that Mr. Montgomery is able to tender the amount of the debt owed.

4           The problem with the first argument is that Litton does not have standing to bring it.  Litton

5    does not appear to the owner of the legal title; rather, it seems to be just the servicer of the loan.  As

6    indicated above, the current owner of the legal title seems to be MTGLQ Investors, L.P.  While the

7    first argument could conceivably be employed by MTGLQ, on its face, *Stafford* does not apply to

8    Litton.

9           As for the second argument, California courts have typically required tender "in an action to

10   set aside a trustee's sale for irregularities in sale notice or procedure."  *Storm v. America's Serv'g*

11   *Co.*, No. 09cv1206-IEG (JMA), 2009 U.S. Dist. LEXIS 103647, at *23 n.9 (S.D. Cal. Nov. 6, 2009)

12   (emphasis omitted).  But, as the court in *Storm* noted, there does not appear to be "any case holding

13   there is a bright-line rule requiring tender of the unpaid debt to set aside a sale in other

14   circumstances, such as where a trustee allegedly sells property that is not encumbered."  *Id.* at *24

15   n.9.  Ultimately, the *Storm* court held that "failure to allege tender is not decisive at this stage.

16   Whether Plaintiffs are required to tender is a matter of discretion left up to the Court.  At this

17   procedural juncture, the Court only decides whether Plaintiffs have pleaded 'enough facts to state a

18   claim to relief that is plausible on its face.'"  *Id.* at *23.

19          In the reply brief, Litton acknowledges the *Storm* court's comments that tender is not

20   required in a situation where the alleged wrongdoing is not based on an irregularity in sale notice or

21   procedure.  According to Litton, however, "Plaintiff's Complaint is based on irregularities in sale

22   notice, specifically section 2923.5."  Reply at 9.  This argument has limited force because the quiet

23   title claim seems to be based on other facts as well – *e.g.*, National's securitization of the loan which

24   appears to be the basis for Mr. Montgomery alleging that "none of the defendants is a holder of the

25   Note, none of them can prove any interest in the Note, and none of them can prove that the Note is

26   secured by the deed of trust."  Compl. ¶ 142.  The Court also notes that there are other exceptions to

27   the tender rule that may be applicable in the instant case.  *See Tamburri v. Suntrust Mortg., Inc*., No.

28   C-11-2899 EMC, 2011 U.S. Dist. LEXIS 144442, at *10, 13 (N.D. Cal. Dec. 15, 2011) (noting that,

"where a sale is void, rather than simply voidable, tender is not required"; also noting that "there is a general equitable exception that tender may not be required where it would be inequitable to do so") (internal quotation marks omitted).

8.    <u>Summary</u>

The Court therefore rules as follows with respect to Ocwen and Litton's motion to dismiss.

(1)    The motion to dismiss the claims against Ocwen is granted.  Mr. Montgomery has leave to amend but only with respect to the quiet title claim.  The other claims against Ocwen are dismissed with prejudice.

(2)    Litton's motion to dismiss the fraud-related claims is granted but Mr. Montgomery has leave to amend.

(3)    Litton's motion to dismiss the Rosenthal claim is granted.  The dismissal is with prejudice.

(4)    Litton's motion to dismiss the wrongful foreclosure claim is granted.  The dismissal is with prejudice.

(5)    Litton's motion to dismiss the quiet title claim is denied.  At this juncture, the Court cannot say that the tender rule is a bar to the claim in its entirety.

///
///
///
///
///
///
///
///
///
///
///
///

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   CONCLUSION

For the foregoing reasons, the Court denies Mr. Montgomery's motion to remand, grants National/PNC's motion to dismiss, and grants in part and denies in part Ocwen and Litton's motion to dismiss.

To the extent the Court has allowed amendment with respect to the claims against Ocwen and Litton, Mr. Montgomery has thirty days from the date of this order to file an amended complaint.  If no amended complaint is filed, then this case shall proceed based on the original complaint with only those claims that have survived the motion to dismiss.

This order disposes of Docket Nos. 12, 16, and 17.

IT IS SO ORDERED.

Dated:  May 31, 2012

_____
EDWARD M. CHEN
United States District Judge

19